```
                   UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA     ]
                             ]
     v.                      ]     Docket No. 2:10-cr-47-1
                             ]
SHAWN SIMARD                 ]
          Defendant.         ]
```

**MEMORANDUM AND ORDER**

Defendant Shawn Simard has been charged under a two-count indictment with receipt and possession of child pornography.  On September 22, 2010, he filed a motion to suppress evidence seized by community corrections officers from his residence and to exclude statements made to law enforcement officers on that date.  For the reasons stated below, the motion is **denied**.

**Factual Background**

The following facts were established at a suppression hearing held on February 8, 2011.

On November 2, 2004, Simard was convicted in state court of one count of lewd and lascivious conduct with a child in violation of Vt. Stat. Ann. tit. 13, § 2602, for which he received a three-year deferred sentence.  The deferred sentence agreement and probation warrant included conditions that he receive "sex offender s/c/t [screening/counseling/treatment] as directed by his P.O."  ECF No. 13-1.  He was also required to abide by standard conditions for sex offenders as directed by his probation officer.  Simard agreed to and signed the special sex

offender conditions to his probationary term.  Special Conditions of Probation, ECF No. 13-5.  One of those terms required that he refrain from possessing or viewing pornography or other sexually stimulating material and that he give to his probation officer "search and seizure privileges to confiscate drugs, pornography, and/or erotica."  *Id*.  Simard was also required to allow his sex offender treatment provider unrestricted communication with his probation officer.

One year later, Simard violated the terms of his probation.  On October 25, 2005, the court modified the term of imprisonment and suspended the sentence.  It ordered that all previously imposed conditions of probation, including the sex offender conditions, remain in effect.  Simard again violated his conditions of probation and in February 2006 the court ordered he be given a 2 to 5 year sentence of imprisonment, with all but 18 months to be suspended.  Again, the same conditions of probation were reimposed.  Simard signed the modified probation order on March 1, 2006.

On May 7, 2007, Simard was released from custody.  Trever Roy, his probation officer, had Simard sign a modified probation order after explaining to Simard its contents.  ECF No. 20-1.  As was standard for the sex offender conditions at that time, an additional condition was added, that is, that the defendant was not to "own or possess a computer without prior approval from

[his] probation officer." *Id*. That additional condition had been authorized as a standard condition by the court in Caledonia County and was to be incorporated in all sex offender conditions of probation. The conditions that Simard not possess pornography and that the probation officer was given "search and seizure privileges" remained in effect. Simard was also required to execute a waiver of confidentiality.

On January 14, 2009, William Fink, a residential sex offender treatment provider for the probation office, notified Simard's probation officer the Defendant had just admitted in treatment that he had a computer at his residence with pornographic images on it. The probation officer asked Miranda Morehouse and Gray Leigh, who were community corrections officers, to go to Simard's residence and look for contraband. He specifically instructed them to pick up any computer found in Simard's possession. Since the Defendant was still at the probation office, although not restrained in any way, Leigh had Simard travel with them to his residence.

At the apartment, Leigh asked Simard to show him the computer, and the Defendant complied. Leigh asked who owned the computer, and Simard responded that it was his brother's. Leigh asked to look in the computer, and Simard agreed. Leigh opened the computer, finding first a picture of the girl who was the victim of Simard's earlier lewd conduct and a video. Prior to

opening the video, Leigh asked how long Simard had been in possession of the computer.  Simard responded that he had possessed the computed since Monday of that week.  Leigh noticed the video had been downloaded on Monday, January 12, 2009, the day on which Simard took possession of the computer.  The video contained what appeared to be child pornography.  At the same time, Morehouse discovered adult pornography while searching the residence.  Leigh was instructed by Simard's probation officer to bring the computer to the office.  Simard also returned to the probation office.

    Leigh played the video for Simard's probation officer and other officers while Simard remained unattended and unrestrained in the waiting room of the office.  The probation officers called the St. Johnsbury police.  Cpl. Gilbert Roberts and Officer Justin Hoyt arrived about an hour later.  The officers viewed the video, concluded it contained child pornography and asked Simard to come into an interrogation room.  Once there, Roberts told Simard that he was not in custody and that he was free to leave at any time.  Roberts also specifically told Simard that he was free to terminate the interview whenever he wished, but that Roberts wanted to ask him some questions.  Simard said he understood.  The door remained open at all times and no one restrained Simard from leaving. Simard chose to answer Roberts's questions.  At first he denied knowledge of the pornography, but

subsequently made incriminating statements. Simard asked about potential punishments for child pornography crimes. He also asked if he could make a deal, to which Roberts responded no, but that the officer would notify prosecutors of his cooperation. During the interview, Simard indicated he had downloaded the pornography found on the computer, and then admitted to having a wireless router in his apartment. Simard gave consent for search of the apartment, and the router was recovered.

### Discussion

Simard seeks to suppress evidence obtained from the search of the computer. He claims that the probation condition that he not possess a computer, which he signed on May 7, 2007, was not judicially authorized and therefore was invalid. Since the computer was seized as a result of this condition, so the argument goes, and this condition was never authorized by the sentencing court, the seizure of the computer was impermissible.

The Vermont Supreme Court has held the power to modify conditions of probation rests with the court. *State v. Rivers*, 2005 VT 65, 878 A.2d 1070 (2005). *See* Vt. Stat. Ann. tit. 28, § 253(a). Probation officers are then given the authority to implement judicially prescribed conditions. *State v. Moses*, 618 A.2d 478 (Vt. 1992).

It is true that the condition prohibiting possession of a computer was not authorized when Simard signed the original

conditions in 2004, nor when he signed the conditions at the time of his sentencing in 2006.  However, Simard's original conditions did require that he abide by the special conditions of probation established for sex offenders.  Those standard conditions were changed prior to May 7, 2007 to add the prohibition against possession of computers.  That added condition was authorized by the court as a general order, then implemented by the probation officers by adding the term to the conditions of special probationary terms for sex offenders.  The court finds that the condition prohibiting possession of computers was judicially authorized and valid in the instant case.

    Even if the court had agreed with the defense that the condition against possession of computers did not apply to Simard, other conditions for which Simard had been on notice since his initial conviction clearly applied and authorized seizure of the computer.  The most obvious condition which would have warranted seizure of the computer was the prohibition against the possession of pornography.  Simard admitted in treatment to possessing pornography on his computer and authorized Leigh to inspect the computer.  Once Leigh found pornography on his computer, Simard's consent in his conditions of probation authorizing his probation officer to seize contraband, as defined in his terms of probation, permitted the officer to secure the computer and search it further.

Essentially, the Defendant's attack on the computer possession condition is meaningless, since other conditions justified seizure of the computer.  As a result, the motion to suppress the physical evidence found at the residence, including evidence recovered from the computer, is **denied**.

Simard next argues he was subjected to custodial interrogation at the probation office by members of the St. Johnsbury Police Department without being advised of and waiving his Miranda rights.  In his later filings, Simard also argues his statements to the officers were made involuntarily in violation of the Fourteenth Amendment.  These arguments are without merit.

The parties agree that the black letter law requires that Miranda rights be given when suspects are subjected to custodial interrogation.  They also agree on the standards by which the court is to determine whether a defendant is in custody for purposes of the Fifth Amendment.  "The test for determining whether an individual is in custody is (1) whether a reasonable person would have thought he was free to leave; and, if not, (2) whether his freedom of action has been curtailed to a degree associated with formal arrest."  *United States v. Falso*, 293 Fed. Appx. 838, 839 (2d Cir. 2008)(citation and internal quotation marks omitted).  "This is an objective test, turning on how a reasonable person in defendant's position would have understood the situation."  *Id.*

Simard was not in custody for Miranda purposes when questioned by Cpl. Roberts.  Roberts told him he was not under arrest, that he could leave at any time, and that questioning would stop if he wished.  The door to the interrogation room was open and unrestricted.  He was not handcuffed.  The conversation between Roberts and Simard remained calm and polite.  The court finds Simard was not in custody at the time of questioning, and that Miranda rights did not have to be given.  As a result, the motion to suppress on Fifth Amendment grounds is **denied**.

Simard also alleges his statement was involuntarily given in violation of the Fourteenth Amendment.  To assess the voluntariness of a statement, the court looks to the totality of circumstances surrounding the giving of that statement.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).  As a part of that inquiry, the court also looks to the defendant's "background and experience, the conditions of his interrogation, and the conduct of the law enforcement officers."  *United States v. Ruggles*, 70 F.3d 262, 264-65 (2d Cir. 1995).

In this case, Simard had prior dealings in the criminal justice system.  He had been convicted of a felony in 2004 and prosecuted for a number of violations of probation since that time.  He had been under probation supervision for a number of years.  His knowledge of the criminal justice system is evidenced by his asking Cpl. Roberts about the penalties to which he would

be exposed and by his effort to explore a potential deal.  His liberty of movement was not restricted, nor was he handcuffed or restrained in any way during interrogation.  The conversation was conducted in non-threatening terms.  Roberts promised him nothing in return for his statement other than to notify the authorities of his cooperation.

Simard suggests there was an implicit threat that his probation would be affected if he did not cooperate.  However, there was absolutely no evidence elicited at the hearing to suggest any threats or coercion were expressed by his probation officers or anyone else.  The evidence suggests just the opposite: that the interview was conducted in polite, non-threatening terms and that it was Simard who raised the topic of potential penalties and a deal.

The court finds Simard's statements were voluntarily given. The motion to suppress on Fourteenth Amendment grounds is therefore **denied**

Dated at Burlington, Vermont this 17th day of March, 2011.


/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge