UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

    v.        Crim. Action No. 2:10–cr–47–wks

Shawn Simard

## REPORT AND RECOMMENDATION
(Doc. 107)

Defendant Shawn Simard has moved under 28 U.S.C. § 2255 to set aside the
judgment in this case and correct his sentence. (Doc. 107.) Following his guilty plea
to one count of possession of child pornography, in violation of 18 U.S.C.
§ 2252(a)(4)(B), Simard was sentenced on August 13, 2012 by United States District
Judge William K. Sessions III to a term of imprisonment of 121 months, to be
followed by a 15-year term of supervised release. (Doc. 93.)

Simard now contends that he should be resentenced because the Vermont
Superior Court has vacated his prior state conviction for lewd and lascivious conduct
with a child sustained in violation of Vt. Stat. Ann. tit. 13, § 2602. That prior state
conviction was used to enhance Simard's federal sentence pursuant to 18 U.S.C.
§ 2252(b)(2). The government opposes Simard's Motion, arguing that the motion is
barred by the one-year statute of limitations set forth in 28 U.S.C. § 2255(f)(4)
because Simard failed to exercise due diligence in seeking review of his state court
conviction. (Doc. 114.)

For the reasons stated below, I recommend that Simard's § 2255 Motion be DENIED, concluding that it is barred by the applicable statute of limitations and that Simard is entitled to neither equitable tolling nor an exception to the limitations period.

<u>**Factual and Procedural Background**</u>

## I.    Charge and Guilty Plea

On March 25, 2010, the federal grand jury returned an Indictment charging Simard with receipt of child pornography as a person with a prior conviction involving the sexual abuse of a minor, in violation of 18 U.S.C. § 2252(a)(2) (Count One), and possession of child pornography as a person with a prior conviction involving the sexual abuse of a minor, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Two).  (Doc. 1.)  On May 12, 2011, a plea agreement was filed wherein Simard, with benefit of counsel, agreed to plead guilty to Count Two of the Indictment.  (Doc. 41.)  Under 18 U.S.C. § 2252(b)(2), offenders who violate § 2252(a)(4)(B) and have previously been convicted of an offense involving the sexual abuse of a minor, are subject to a mandatory minimum of not less than 10 years of imprisonment and up to a 20-year maximum term of imprisonment.

## II.    Sentencing

Before sentencing, the district court analyzed whether Simard's 2004 conviction in Vermont state court for lewd and lascivious conduct with a child, in violation of Vt. Stat. Ann. tit. 13, § 2602, triggered the 10-year mandatory minimum

sentence set forth in § 2252(b)(2). (Doc. 61.) At the time Simard pleaded guilty to violating Vt. Stat. Ann. tit. 13, § 2602, the statute provided as follows:

> [n]o person shall willfully and lewdly commit any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child.

(*Id.* at 4–5 (alteration in original) (quoting Vt. Stat. Ann. tit. 13, § 2602 (2004)).) The district court concluded that "there is no question that Mr. Simard's conviction for engaging in sexual conduct with a seven-year-old child constitutes 'a prior conviction . . . under the laws of any State relating to . . . abusive sexual conduct involving a minor or ward.'" (*Id.* at 14 (omissions in original) (quoting 18 U.S.C. § 2252(b)(2)).) Therefore, "[o]n the basis of th[e] modified categorical analysis," the court concluded that the 10-year mandatory minimum sentence set forth in 18 U.S.C. § 2252(b)(2) applied. (*Id.* at 15.)

A presentence report (PSR) was submitted to the court in anticipation of sentencing. That report concluded that Simard faced an advisory Sentencing Guideline imprisonment range of 121 to 151 months, based on an adjusted offense level of 30 and a Criminal History Category of III. (PSR at 13, ¶ 69.) The PSR also noted that Simard faced a mandatory minimum term of 10 years, as a consequence of his guilty plea and his prior conviction for lewd and lascivious conduct with a child. (*Id.* ¶ 68.)

On August 13, 2012, Simard appeared for sentencing. Simard acknowledged that he had reviewed the PSR and there were no factual mistakes in the report. (Doc. 104 at 3.) The court heard argument from both the government and defense counsel.

The government advocated for an upward departure from the applicable advisory Sentencing Guideline range; and Simard's counsel argued for a downward departure or, alternatively, a non-Guideline sentence. (*Id*. at 7–26.) In doing so, defense counsel asserted that Simard's prior criminal history score overstated the seriousness of his criminal history. (*Id*. at 26.) Simard's counsel also sought a departure based on the totality of the circumstances. (*Id*.) The district court denied both motions for departures and/or variances and sentenced Simard to 121 months in prison and a 15-year term of supervised release. (Doc. 92; Doc 104 at 31–32.) Acknowledging the seriousness of Simard's crime, the court sentenced him at the low end of the recommended range in part because of his relative youth and the possibility that he might react positively to treatment. (Doc. 104 at 27–31.)

## III.   Direct Appeal

Simard pursued a direct appeal of his sentence, challenging the use of the prior state conviction to enhance the federal sentence. (Doc. 102.) *See United States v. Simard*, 731 F.3d 156 (2013). Although the Second Circuit rejected the district court's application of "the modified categorical approach" to determine whether the state conviction triggered § 2252(b)(2)'s sentencing enhancement, *id*. at 161, the court of appeals concluded that, under a categorical approach, Simard's state conviction triggered § 2252(b)(2)'s sentencing enhancement. *Id*. at 162–63. As a result, the Second Circuit affirmed Simard's sentence. *Id*. at 164. Simard sought a writ of certiorari, which was denied on April 21, 2014. *Simard v. United States*, 134 S. Ct. 1874 (2014).

Simard now contends that during his direct appeal his attorneys told him that they had considered whether his prior conviction could be vacated in state court, advising him that "it would be very difficult or impossible to do so." (Doc. 119-1 at 1.) He does not now recall why they told him a state court challenge would be difficult. (*Id.*)

## IV.    Conditions of Imprisonment

Simard also alleges that, while imprisoned, he was assaulted at least five times and sexually abused one time; he spent a significant amount of time in special housing units at various facilities; he was moved to different facilities approximately 13 times; and he lost his legal papers and property while housed in a facility in Florida. (Doc. 119-1 at 1–2.)

## V.    Proceedings in State Court

In the spring and summer of 2014, the Vermont Supreme Court decided two cases addressing the proper standard for administering a plea colloquy under Vermont Rule of Criminal Procedure 11(f): *In re Stocks*, 2014 VT 27, 196 Vt. 160, 94 A.3d 1143, on March 21, 2014, and *In re Manosh*, 2014 VT 95, 197 Vt. 424, 108 A.3d 212, on August 14, 2014. The Court held in those cases that a defendant who pleads guilty must admit, on the record, that a factual basis for the charge exists. *Stocks*, 2014 VT 27, ¶ 17; *see Manosh*, 2014 VT 95, ¶¶ 18, 24 (holding written waiver of rights could not substitute for open colloquy in court).

Simard now claims that, based on these decisions, his attorneys informed him in "mid-to-late 2015" that it was possible to challenge his prior state conviction with a

motion for post-conviction relief (PCR).  (Doc. 119-1 at 2.)  Accordingly, on February 16, 2016, approximately 18 months after *Manosh* was decided, Simard's state counsel filed a motion for post-conviction relief on behalf of Simard in the civil division of the Vermont Superior Court for Caledonia County.  (Doc. 107-2 at 1; *Manosh*, 2014 VT 95.)  According to Simard, the delay in filing was caused by poor communication with his state counsel.  (Doc. 119-1 at 1.)  In the PCR motion, Simard argued that his guilty plea proceeding did not comport with the requirements of Vermont Criminal Procedural Rule 11(f) as interpreted in *Stocks* and *Manosh*.  (Doc. 114-1 at 4–6.)

On March 17, 2016, the State of Vermont stipulated to vacate Simard's conviction for lewd and lascivious conduct with a child (Doc. 114-2), and on April 11, 2016, the civil division of the superior court vacated his conviction.  (Doc. 107-1 at 8.) Because this vacatur reopened the criminal proceedings against Simard, the civil division referred the matter to the superior court criminal division for further proceedings relating to the now-pending charge of lewd and lascivious conduct with a child.  (*Id.*)  According to the criminal docket sheet submitted with Simard's § 2255 Motion, the criminal matter was still pending as of March 27, 2017, and may be "[h]eaded toward trial."  (*Id.* at 10.)  At present, the charge remains pending. *See State v. Simard*, No. 306-5-04 Cacr (Vt. Super. Ct.).

## VI.    The § 2255 Motion

Following the vacatur of his state conviction, Simard filed the present § 2255 Motion asking this court to set aside the judgment in this case and to correct his sentence.  (Doc. 107.)  Specifically, he asserts that, absent the mandatory minimum

sentence arising from the inclusion of his vacated state conviction, his "likely Guideline Range was 97–121 months." (*Id.* at 2.) The government opposes the Motion, arguing that Simard's Motion is untimely under the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, § 105, 110 Stat. 1214 (codified as 28 U.S.C. § 2255(f)). (Doc. 114 at 3.) The government points out that Simard's federal judgment was entered on August 15, 2012, and yet Simard did not seek review of his state court conviction for approximately three and a half years. (Doc. 114 at 4–5.) The government further contends that Simard does not provide any justification to explain this delay. (*Id.*)

In his Reply, Simard argues that the government misreads the one-year statute of limitations. (Doc. 119.) According to Simard, under *Johnson v. United States*, 544 U.S. 295 (2005), the one-year statute of limitations starts from the date of vacatur of the state conviction. (Doc. 119 at 2.) Simard's state conviction was vacated on April 11, 2016 and he filed the instant § 2255 Motion on April 10, 2017.[1] (Doc. 107-1 at 8; Doc. 107.) Thus, Simard asserts that his Motion falls within the one-year limitations period as defined by *Johnson*. (Doc. 119 at 2.) Further, Simard argues that he was diligent in seeking state relief. He contends that three factors support his showing of due diligence. Those considerations are as follows: first, that his counsel in the federal case informed him that a state challenge was not possible;

---

[1] In his Reply, Simard incorrectly states that he filed the instant Motion on April 10, 2016; however, as the date stamp for his § 2255 Motion indicates, he filed this Motion in 2017. (*See generally* Doc. 107.)

second, that the Vermont Supreme Court's decisions in *In re Stocks* and *In re Manosh* made a state challenge "vastly more likely to succeed"; and third, that the practical realities of Simard's confinement made challenging his state conviction more difficult. (*Id.* at 1.)  Alternatively, Simard argues that the statute of limitations should be equitably tolled because he is actually innocent of the underlying state conviction.

As discussed below, I conclude that Simard's Motion is untimely because he fails to demonstrate the necessary element of due diligence in challenging his prior conviction.  Further, neither equitable tolling nor the equitable exception for actual innocence saves his motion.

<u>Analysis</u>

## I.    Statute of Limitations

The government contends that Simard's Motion is barred by the one-year period of limitations governing § 2255 motions.  Under the AEDPA, § 2255 motions are subject to a one-year limitations period, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4).  At issue here is the fourth event, i.e., the date when the facts supporting the claim could have been discovered through the exercise of due diligence.  *Id.* § 2255(f)(4).

In *Johnson v. United States*, the Supreme Court held that, under § 2255(f)(4), a state court's vacatur of a prior conviction is a "fact" that resets the one-year limitations period.  544 U.S. at 308 ("[N]otice of the order vacating the predicate conviction is the event that starts the one year running.").  In order for the one-year limitations period to run from the state court vacatur, however, the petitioner must establish that he or she acted "diligently to obtain the state-court order vacating his predicate conviction."  *Id.* at 310; *see also Shabazz v. Filion*, 402 F. App'x 629, 630 (2d Cir. 2010) ("[T]he burden of demonstrating due diligence rests with petitioner.").

The due diligence analysis begins with the date of entry of judgment on the federal conviction.  *Johnson*, 544 U.S. at 309 (concluding that "settling on the date of judgment as the moment to activate due diligence seems best to reflect the statutory text and its underlying concerns").  As of that date, the petitioner understands how the prior state conviction enhanced the federal sentence and he should thus seek to challenge the state conviction at that time.  *Id.* at 308 ("[D]iligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence."); *see id.* at 309 ("After the entry of judgment, the subject of the § 2255 claim has come into being, the significance of inaction is clear, and very little litigation would be wasted.").  Section 2255(f)(4) does not, however, require the

"maximum feasible diligence" in moving to challenge a sentence; rather, "only due, or reasonable, diligence" is required. *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000) (internal quotation marks omitted). In analyzing whether the petitioner exercised reasonable diligence, the court should consider the conditions of the petitioner's confinement, *id.* at 190–91; however, neither procedural ignorance nor total reliance on an attorney's advice justifies a petitioner's lack of diligence. *See Johnson*, 544 U.S. at 297 ("[T]he Court has never accepted . . . procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."); *Hannigan v. United States*, 131 F. Supp. 3d 480, 494 (E.D.N.C. 2015) ("[Petitioner's] unquestioning acceptance of his attorney's vague timeline does not constitute the exercise of due diligence.").

In this case, Simard was sentenced on August 13, 2012, and the judgment was entered on August 15, 2012. (Docs. 92, 93, 107.) After sentencing, Simard's attorneys commenced a direct appeal of the sentence. (Doc. 102.) Simard asserts that his attorneys told him that, based on their review of Vermont law, it would be very difficult, if not impossible, to challenge his state conviction. (Doc 119-1 at 1.) Simard does not remember the grounds for his attorneys' advice, but he followed their advice and did not challenge the state conviction, instead focusing on the direct appeal process. (*Id.* at 1–2.)

Then, as noted above, the Vermont Supreme Court decided *In re Stocks* and *In re Manosh* in March 2014 and August 2014, respectively. As a result of these two decisions, Simard's federal attorney informed him in "mid-to-late 2015" that it "might

be possible to challenge [his] state conviction." (Doc. 119-1 at 2.)  On February 16,

2016, Simard filed his state PCR motion, approximately 18 months after *Manosh* was

issued. (Doc. 107-2 at 1; *Manosh*, 2014 VT 95.)  According to Simard, the delay in

filing was a result of his "problems communicating with [his] state attorney." (Doc.

119-1 at 2.)  Specifically, Simard states that he had "difficulty contacting the [state]

attorney assigned to [his case] as their office d[id] not accept collect calls," and he

"was not working at the time and had trouble getting stamps from staff." (*Id.*)

Simard also appears to allege that his conditions of confinement contributed to his

delay in filing, stating that his experience being housed in a federal prison with a

child pornography conviction was a challenge (*id.* at 1), as he was assaulted "at least

five times and sexually abused another time"; he "spent a significant amount of time

in the special housing unit[s]" of the facilities where he was housed; he was "moved

approximately 13 times after being sentenced"; and his "legal papers and property

were . . . lost" while he was housed at a facility in Florida (*id.* at 2).

        These facts do not excuse the delayed filing.  It took Simard three and a half

years after the date of federal judgment to file his PCR motion.  This lengthy period of

time surpasses the period of time that the U.S. Supreme Court found unreasonable in

*Johnson*.  There, the Supreme Court concluded that even an unexplained 21-month

delay after judgment was unreasonable. *Johnson,* 544 U.S. at 311 ("[Petitioner]

would still have delayed unreasonably, having waited over 21 months."); *see also*

*Rossetti v. United States*, 773 F.3d 322, 333 (1st Cir. 2014) ("[Petitioner] waited three

and a half years . . . to challenge his conviction, longer than the delay the Court found

to be non-diligent in *Johnson*."); *Almanzar-Duran v. United States*, No. 00 Civ.
407(RCC), 2005 WL 1639421, at *4 (S.D.N.Y. July 11, 2005) ("[A]n unexplained 21-
month delay in obtaining a state-court order vacating a predicate conviction is not
'diligent' as a matter of law.").

Although Simard now contends that his attorneys advised him that a state
PCR motion would be futile (*see* Doc. 119-1 at 1), nothing in *Johnson* suggests that a
petitioner acts with reasonable diligence by relying on his attorneys' advice without
further effort or inquiry.  *See Johnson*, 544 U.S. at 297.  Indeed, the case law
following *Johnson* suggests the opposite: that a duly diligent person in Simard's
position should have had, at minimum, a basic understanding of the legal grounds for
a state PCR motion and should have periodically asked his attorneys to challenge his
state conviction.  *See Hannigan*, 131 F. Supp. 3d at 494; *Vidro v. United States*, No.
CR. 3:94CR112 (AHN), Civ.3:01CV1309 (AHN), 2003 WL 22871691, at *2 (D. Conn.
Dec. 1, 2003) ("[D]uly diligent person in her circumstances should have clarified [with
her attorney] any misconceptions about the basis for filing a habeas petition before
the eight months that passed here, despite . . . a lack of formal legal training."); *Zapata v. United States*, Nos. 90 CR. 943(AGS), 99 Civ. 0085(AGS), 2000 WL
1610801, at *2 (S.D.N.Y. Oct. 27, 2000) ("A convicted defendant need not immediately
'check up' on whether counsel has timely filed a notice of appeal . . . [but] . . . a duly
diligent person . . .  would not have needed three and a half years . . . to discover that
counsel had not filed a notice of appeal.").

12

Simard argues that, because he diligently pursued his direct appeal of the federal conviction, he exercised due diligence under *Johnson*. (Doc. 119 at 6.) But pursuing a direct federal appeal does not lend support to a claim that Simard diligently sought to challenge the predicate state conviction. In *Johnson*, the Supreme Court specifically concluded that the due diligence inquiry starts *before* the "date of finality after direct appeal," reasoning that, "[a]fter the entry of judgment, the subject of the § 2255 claim has come into being, the significance of inaction is clear, and very little litigation would be wasted, since most challenged federal convictions are in fact sustained." *Johnson*, 544 U.S. at 309–10. Here, Simard's direct appeal attacked the use of the predicate state conviction, and the Second Circuit affirmed his enhanced sentence, albeit on different grounds. *See Simard*, 731 F.3d at 159 (concluding categorical approach, not modified categorical approach, required application of ten-year mandatory minimum). Plainly, as of the date of his federal judgment, Simard understood the impact of his prior state conviction; thus, reasonable diligence required him to challenge that conviction at the state level at that time.

Simard also attempts to justify his delay in filing by contending that *Stocks* and *Manosh* changed the standard under Vermont Criminal Procedure Rule 11(f) for the establishment of a factual basis for a guilty plea, and therefore any lack of diligence prior to those decisions is irrelevant. (Doc. 119 at 4–6.) As an initial matter, *Stocks* and *Manosh* did not fundamentally alter Vermont criminal procedure. In fact, there was ample precedent for Simard to have mounted a challenge to his

2004 plea colloquy prior to *Stocks* and *Manosh*. *See State v. Yates*, 169 Vt. 20, 27, 726 A.2d 483, 488 (1999) (holding court's failure to question the defendant as to factual basis for the charge was a violation of Rule 11(f)); *In re Dunham*, 144 Vt. 444, 451, 479 A.2d 144, 148 (1984) (concluding Rule 11(f) violated where factual basis for the charge not established); *In re Kasper*, 145 Vt. 117, 117, 483 A.2d 608, 609 (1984) (same). Recently in *In re Bridger*, for example, the Vermont Supreme Court held, consistent with *Stocks* and *Manosh*, that a defendant's generic admission to unspecified facts in multiple affidavits covering 16 burglary counts did not provide an adequate factual basis sufficient to support the defendant's guilty plea under Vermont Criminal Procedure Rule 11(f). 2017 VT 79, ¶ 24, __ Vt. __, __ A.3d __. The Court in *Bridger* acknowledged that *Stocks* and *Manosh* relied on prior Vermont precedent and did not fundamentally depart from those prior cases. *Id.* ¶¶ 17–20. Thus, Vermont law at the time of Simard's sentencing clearly presented Simard an opportunity to challenge his state conviction on the ground of an inadequate Rule 11 factual inquiry. *See id.* ¶ 29 (Dooley, J., concurring) ("[B]oth the majority opinion and the dissenting opinion rely on precedents that support 100 percent the holding of each, but have never been reconciled."). By arguing otherwise, Simard ignores the Supreme Court's dictate that a petitioner must act diligently in challenging a state conviction; acting diligently only after discovering that the state conviction may be vacated is insufficient. *See Johnson*, 544 U.S. at 310 ("[I]t does not strain logic to treat required diligence in the 'discovery' of that fact [leading to the state vacatur] as entailing diligence in the steps necessary for the existence of that fact."). In short,

"under *Johnson*, the petitioner must act diligently both in discovering the new facts underlying his claim, and in pursuing state relief on the basis of those new facts." *Shuler v. Spitzer*, No. 05-CV-0932 (JFB), 2007 WL 1704644, at *7 n.3 (E.D.N.Y. June 13, 2007). Given prior precedent governing Vermont Rule 11(f), if Simard had heeded this requirement, he may well have achieved a timely and successful challenge of his prior state conviction. *See In re Bridger*, 2017 VT 79, ¶ 29.

Equally important, Simard does not adequately explain why he waited over 18 months after the decision in *Stocks* or *Manosh* to file his motion for post-conviction relief. As stated above, the Vermont Supreme Court issued *Manosh* on August 14, 2014, and it wasn't until February 16, 2016, that Simard filed his PCR motion in state court. (Doc. 107-2.) As Simard argues, some of the delay may be justified by Simard's conditions of confinement; for example, he points to his trouble adjusting to life in federal prison and being transferred to different facilities on 13 occasions since his federal judgment issued. (Doc. 119 at 10 (citing *United States v. Longshore*, 644 F. Supp. 2d 658, 661 (D. Md. 2009) (concluding petitioner exercised due diligence who pursued vacatur of one of three predicate state convictions within two months of federal judgment).) But "repeated transfers" do not excuse untimeliness, absent a showing of due diligence while in the process of being transferred. *Anjulo–Lopez v. United States*, 541 F.3d 814, 818–19 (8th Cir. 2008) (concluding petitioner who claimed he was "unable to communicate with anyone" while being transferred did not demonstrate due diligence). Taking into account the circumstances of Simard's confinement, a reasonably diligent person would have discovered the change in

Vermont law and acted accordingly prior to the passage of 18 months. *See United States v. Hoskins*, Case No. 1:11-cr-69-jgm-1, 2016 WL 4154344, at *2 (D. Vt. Aug. 5, 2016) (though reasonable under the circumstances, generally, a more than 11-month delay "approaches the outer limit of due diligence" (quotation omitted)), *appeal filed* No. 17-70-cr (2d Cir. Jan. 6, 2017).

Ultimately, Simard bears the burden to prove that he acted diligently to ascertain, in a timely manner, "the grounds for challenging the predicate state-court conviction." *United States v. Bass*, 864 F. Supp. 2d 353, 358 (E.D. Pa. 2012); *see also Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."); *Longshore*, 644 F. Supp. 2d at 662 ("District courts have been reluctant to excuse a petitioner's delay when the petitioner could have easily ascertained the facts supporting his motion to correct sentence."). Simard waited until two to six months *after* his attorneys conclusively told him in "mid-to-late 2015" that it was possible to challenge his state conviction, to file in state court. (Doc. 119-1 at 2.) Simard's alleged problems communicating with his state counsel during these months do not excuse the requirement of due diligence. *United States v. Rodriguez*, 858 F.3d 960, 963 (5th Cir. 2017) ("[C]omplete inactivity in the face of no communication from counsel does not constitute diligence." (internal quotation marks omitted)); *Vidro*, No. CR. 3:94CR112 (AHN), Civ.3:01CV1309 (AHN), 2003 WL 22871691, at *2 (noting lack of legal training does not justify failure to communicate with attorney).

16

The two cases upon which Simard relies do not alter this conclusion. (*See* Doc. 119 at 4–6 (citing *Rodriguez v. United States*, 186 F. App'x 857, 859 (11th Cir. 2006); *Horn v. United States*, No. 3:13–01321, 2014 WL 2197030 (M.D. Tenn. May 27, 2014).) Although both bear some superficial resemblance to this case, there are crucial distinctions. First, a clear change in state law occurred in both *Rodriguez* and *Horn*, unlike the instant case. For example, in *Rodriguez v. United States*, a Florida Supreme Court decision expanded the statute of limitations applicable to Rodriguez's state habeas claim. 186 F. App'x at 858. Because of this new limitations period, Rodriguez successfully challenged one of his state convictions. *Id.* at 858–59. This definitive expansion of the limitations period contrasts sharply with the clarification of Vermont law governing change of plea proceedings in *Stocks* and *Manosh*. *See In re Bridger*, 2017 VT 79, ¶ 29. Long before *Stocks* and *Manosh* an acknowledgement of factual basis for a guilty plea was required from an accused under Rule 11(f). Similarly, *Horn v. United States* involved a clear-cut change in procedural law; in that case, the Maryland legislature adopted a new rule allowing *coram nobis* proceedings for petitioners who failed to appeal their criminal convictions. 2014 WL 2197030 at *2. The instant case simply does not involve such an undisputed change in Vermont law. *Compare Rodriguez*, 186 F. App'x at 859 ("It was not until the decision . . . that the possibility of collateral relief became available to [the petitioner.]"), *with In re Bridger*, 2017 VT 79, ¶¶ 11–18 (surveying over 30 years of case law concerning Rule 11 colloquies).

Second, the petitioners in *Horn* and *Rodriguez* promptly challenged their state convictions after the law conclusively changed. Specifically, the petitioner in *Rodriguez*, 186 F. App'x at 858, filed a state habeas action within two months after the change in the statute of limitations; and the petitioner in *Horn*, 2014 WL 2197030 at *2, challenged his state conviction six months after the legislature altered the *coram nobis* rules. By contrast, Simard waited over 18 months after the *Stocks* and *Manosh* decisions to file his PCR motion. (Doc. 119-1 at 2.)

Accordingly, Simard cannot demonstrate the requisite due diligence in seeking vacatur of his state conviction, and his Motion is therefore time-barred.

## II.    Equitable Tolling

Simard argues that, even if his § 2255 Motion is untimely, he is entitled to equitable tolling of the statute of limitations. (Doc. 119 at 15.) But he provides no factual or legal support to satisfy the standard for equitable tolling; thus, the claim fails.

"Equitable tolling applies only in the 'rare and exceptional circumstances' beyond a prisoner's control that make it impossible to file a petition on time." *Hizbullahankhamon v. Walker*, 105 F. Supp. 2d 339, 343 (S.D.N.Y. 2000). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). To satisfy this standard, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing, a

demonstration that cannot be made if the petitioner, acting with reasonable diligence,

could have filed on time notwithstanding the extraordinary circumstances." *Valverde*

*v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Simard fails to identify an extraordinary circumstance that prevented timely

filing of his habeas petition. Simard's apparent reliance on the state of the Vermont

law prior to the decisions in *Stocks* and *Manosh* as an extraordinary circumstance is

misplaced. (*See* Doc. 119 at 15.) At most, these decisions clarified existing state law

and only provided a clearer path for Simard to challenge his state conviction; they did

not prevent the timely filing of his petition. *Cf. Holland*, 560 U.S. at 649.

Simard does allege that he was assaulted several times, spent time in the

special housing unit, transferred 13 times, and lost his legal papers and property.

(Doc. 119-1 at 1–2.) Even assuming these events may be viewed as extraordinary

circumstances, *see Valverde*, 224 F.3d at 134, he provides no dates for the events nor

demonstrates a causal relationship between these events and the lateness of his

filing. (Doc. 119 at 15.) Moreover, as noted earlier, "repeated transfers" do not

constitute "extraordinary circumstances" justifying tolling the limitations period,

absent a showing of due diligence while in the process of being transferred. Here

Simard again fails. *Warren v. Kelly*, 207 F. Supp. 2d 6, 10 (E.D.N.Y. 2002) (collecting

cases) (concluding transfers between prison facilities, solitary confinement,

lockdowns, restricted access to the law library and an inability to secure court

documents do not qualify as extraordinary circumstances for purposes of tolling the

limitation period); *see Hizbullahankhamon*, 105 F. Supp. 2d at 344 (250-day delay fatal to equitable tolling claim). Regarding Simard's other alleged conditions of imprisonment, the statute of limitations is generally not tolled based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research. *See Fennell v. Artuz*, 14 F. Supp. 2d 374, 377 (S.D.N.Y. 1998); *Atkins v. Harris*, No. C 98–3188 MJJ(PR), 1999 WL 13719, at *2 (N.D. Cal. Jan. 7, 1999) (specifying that "lockdowns, restricted library access[,] and transfers do not constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations").

Rather than focus on the two-part test for equitable tolling, Simard argues that he is actually innocent of the vacated conviction and that, as a result, the statute of limitations "must yield to the imperative of correcting a fundamentally unjust incarceration." (Doc. 119 at 13 (quoting *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012)).) Again, however, he provides no factual support to satisfy the demanding standard for actual innocence.

Properly speaking, actual innocence provides an equitable exception to the AEDPA's statute of limitations, not a basis for an equitably tolling of the statute of limitations. *See Rivas*, 687 F.3d at 549; *see also McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924, 1934 (2013) (concluding that actual innocence exception applies to "an untimely first federal habeas petition alleging a gateway actual-innocence claim"). An allegation of actual innocence affords "'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on

the merits.'" *Rivas*, 687 F.3d. at 540 (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). This is a "severely confined category" of cases because a petitioner must submit new evidence showing "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin*, 133 S. Ct. at 1934 (internal quotation marks and alteration omitted); *see also Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 172 (2d Cir. 2000) (holding actual-innocence exception applies if defendant shows by clear and convincing evidence "that he is actually innocent of the act on which his harsher sentence was based"). The same strict standard applies to a petitioner who pleaded guilty and did not have the evidence evaluated by a jury: he or she "must show that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him [or her]." *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (internal quotation marks omitted).

Simard has submitted no evidence at all, let alone newly discovered evidence, that clearly and convincingly establishes his factual innocence. *Cf. Spence*, 219 F.3d at 172 ("[T]he actual innocence inquiry will focus on the reliability of . . . facts that make defendant eligible for a harsher sentence under his agreement with the state."). His claim—that his state conviction was vacated because the plea colloquy did not comply with Vermont criminal procedure rules—is more akin to a claim of evidence in mitigation of punishment rather than actual innocence. *Cf. id.* (finding petitioner actually innocent after he submitted "testimony from five reputable alibi witnesses

who confirmed his claim that he had been home with family and friends at the time the crime was committed"). Moreover, according to the state docket sheet, Simard's underlying criminal case is still pending and may be "[h]eaded toward trial." (Doc. 107-1 at 10.) *See State v. Simard*, No. 306-5-04 Cacr (Vt. Super. Ct.). Because Simard advances no compelling evidence that he is factually innocent of the now pending state offense, he does not fit into the narrowly defined category of actual innocence. *McQuiggin*, 133 S. Ct. at 1934; *see also Lee v. Brunsman*, 474 F. App'x 439, 443 (6th Cir. 2012) ("[A] legitimate actual-innocence argument is a challenge to the correctness of a factual conclusion that was a prerequisite to the petitioner's sentence."); *McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011) (holding actual innocence exception was not available to petitioner who made "no claim of factual innocence of the predicate offense" (emphasis omitted)); *United States v. Pettiford*, 612 F.3d 270, 282 (4th Cir. 2010) ("To succeed on actual innocence grounds . . . a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." (internal quotation marks omitted)); *Boyd v. United States*, Nos. CV 111-136, CR 198-012, 2015 WL 4389991, at *9 (S.D. Ga. July 15, 2015) (concluding actual innocence exception not available where petitioner did not argue that he did not commit the predicate offense).

Based on the foregoing, Simard has failed to demonstrate entitlement to either an equitable exception to the applicable limitations period or that he is entitled to equitable tolling of that period.

## Conclusion

For these reasons, I recommend that Simard's § 2255 Motion to set aside the judgment and correct his sentence (Doc. 107) be DENIED.

Because the motion and other files and records in this case "conclusively show that [Simard] is entitled to no relief," there is no need to conduct an evidentiary hearing on the Motion.  28 U.S.C. § 2255(b).  Nor is there cause for issuance of a certificate of appealability, which may issue in a § 2255 proceeding "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Generally, a movant meets this burden by demonstrating that "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  Simard has not made this showing, and thus I recommend DENYING any request for issuance of a certificate of appealability.

Dated at Burlington, in the District of Vermont, this 5th day of December 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).