UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:10-cr-47 |
| | ) | |
| SHAWN SIMARD | ) | |

**OPINION AND ORDER**

Defendant Shawn Simard, through counsel, has moved pursuant to 28 U.S.C. § 2255 to set aside the judgment in this case and correct his sentence. Simard requests re-sentencing because the prior state court conviction used to enhance his federal sentence has since been vacated. The government does not contest the substance of Simard's request, but opposes the motion as untimely and for lack of due diligence in pursuing post-conviction relief in state court.

Magistrate Judge John M. Conroy issued a Report and Recommendation recommending denial of Simard's motion for lack of due diligence. Simard has filed an objection to the Report and Recommendation. For the reasons set forth below, the Court finds that Simard's Section 2255 motion is not untimely, and that given the lack of clarity in Vermont law, the advice received from counsel, and the challenges specific to Simard while incarcerated, his pursuit of post-conviction review in state court did not lack due diligence. The motion for habeas corpus relief is therefore **granted**.

## **Standard of Review**

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## **Background**

Simard is currently serving a federal sentence after pleading guilty to possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). At his August 13, 2012 sentencing, Simard faced a mandatory minimum term of ten years in prison as a person previously convicted of sexually abusing a minor. *See* 18 U.S.C. § 2252(b)(2). The underlying offense was a 2004 state court conviction for lewd and lascivious conduct with a child in violation of 13 V.S.A. § 2602.

With an adjusted offense level of 30 and a Criminal History Category of III, Simard's advisory Guideline range was 121-151 months. The Court sentenced him to 121 months in prison, to be

followed by 15 years of supervised release.  Simard pursued a direct appeal, and the Second Circuit affirmed his sentence.  The Supreme Court denied his petition for a writ of certiorari on April 21, 2014.

Simard's state court conviction was vacated in 2016.  According to his state petition for post-conviction relief, filed by the Vermont Prisoners' Rights Office on February 16, 2016, the trial court never asked Simard during his change of plea colloquy whether he admitted to the facts establishing the elements of the crime.  Instead, the court asked whether he understood the charge, and the only agreement to underlying facts came from defense counsel.  ECF No. 114-1 at 1.

As discussed below, Vermont law has been unclear in recent years about the requirements of Rule 11 plea proceedings.  In Simard's case, the State stipulated to granting his post-conviction review petition, and on April 11, 2016 the state court signed the Entry Order vacating his state court conviction.[1]  The vacatur re-opened the criminal proceeding, and the charge against Simard has since been dismissed.  Simard filed his Section 2255 motion on April 10, 2017.

---

[1] The government argues that the state court actually vacated Simard's sentence on April 5.  While the state court docket does include an entry reflecting vacatur on April 5 (ECF No. 107-2 at 3), the written Entry Order is dated April 11 (ECF No. 119-2 at 1).  Moreover, the Magistrate Judge found that the state court vacated the conviction on April 11, 2016 (ECF No. 120 at 6), and the government has not challenged that conclusion.

3

## **Discussion**

In *Johnson v. United States*, 544 U.S. 295, 302 (2005), the Supreme Court held that a state court's decision vacating a prior conviction is a "fact" that restarts the Section 2255 one-year limitation period, so long as the defendant sought vacatur of his conviction with due diligence. *Johnson* found that a defendant must move for relief in state court "as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence," and that the duty to act with due diligence begins on "the date of judgment" in his federal case. 544 U.S. at 308-09.

Here, the government submits that Simard failed to file his Section 2255 motion within the one-year limitations period. As noted above, Simard filed his motion within one year of the Entry Order vacating his state court conviction. His filing was therefore timely.

The government also contends that Simard failed to satisfy *Johnson*'s due diligence requirement. The Second Circuit has determined that the federal habeas corpus statute "does not require the maximum feasible diligence, only 'due,' or reasonable diligence." *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000); *see also Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013). "Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to

4

exhaust every imaginable option, but rather to make reasonable efforts." *United States v. Longshore*, 644 F. Supp. 2d 658, 661 (D. Md. 2009) (citing *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)).

In this case, there are arguably two delays at issue. The first is the period of time between Simard's federal sentencing and the emergence of Vermont case law clarifying his right to relief in state court. The second is the alleged delay between that clarification and Simard's filing of a state court petition for post-conviction review.

With respect to the first period of alleged delay, Simard submits that his right to relief in state court was not clear at the time of his federal conviction. Indeed, the precise contours of lawful Rule 11 plea proceedings in Vermont were, until recently, unsettled. *See In re Bridger*, 2017 VT 79, ¶ 28, 205 Vt. 380, 396, 176 A.3d 489, 499 ("Although we have decided many Rule 11 cases, I think we have failed to achieve clear requirements that can be implemented correctly in thousands of cases.") (Dooley, J., concurring). Prior to Simard's 2004 state court plea, *State v. Yates*, 169 Vt. 20, 27, 726 A.2d 483, 488 (1999) required that a defendant personally admit to the factual basis for the charge. Shortly thereafter, however, the Vermont Supreme Court in *State v. Morrissette*, 170 Vt. 569, 571, 743 A.2d 1091, 1093 (1999) (mem.) upheld a conviction where the defendant

5

had signed a waiver-of-rights form and stipulated to the underlying facts through his attorney. Citing the memorandum decision in *Morrissette*, *State v. Cleary,* 2003 VT 9, ¶ 29, 175 Vt. 142, 153, 824 A.2d 509, 518 affirmed the defendant's conviction where the underlying facts were agreed to by counsel. The *Cleary* court found that because the underlying police affidavit was acknowledged by the defendant, and the factual basis agreed to by counsel, "the factual basis was in effect stipulated to and admitted by defendant. Thus, there was substantial compliance with Rule 11." *Id.* ¶¶ 29, 30. In his *Cleary* dissent, Justice Dooley opined that the memorandum decision in *Morrissette* had "*sub silentio* overruled the one-year-old decision in *Yates*." *Id.* ¶ 61.

On March 21, 2014, the Vermont Supreme Court issued *In re Stocks*, 2014 VT 27, 196 Vt. 160, 94 A.3d 1143, holding that a defendant who pleads guilty must admit on the record to the factual basis for the charge. *Stocks* was in accord with *Yates* but did not expressly overrule *Cleary*. *See In re Bridger*, 2017 VT 79, ¶ 28 (noting that *Stocks* did not "explicitly overrul[e]" *Cleary*). On August 24, 2014, the Vermont Supreme Court held in *In re Manosh*, 2014 VT 95, 197 Vt. 424, 108 A.2d 212 that a defendant's written waiver of rights could not substitute for an open colloquy in court. *Manosh* overruled *Morrissette* to the extent that a trial court must personally address the defendant

6

and explain his rights in open court. 2014 VT 95, ¶ 23.

In 2017, the Vermont Supreme Court's *Bridger* decision reinforced *Yates*, overruled *Cleary*, and clarified its rejection of *Morrissette*. *Bridger* first explained that, according to longstanding Vermont precedent, Rule 11(f) requires an admission on the record from the defendant. 2017 VT 79, ¶ 11 ("[W]e have consistently concluded that an 'adequate factual basis' sufficient to demonstrate voluntariness must consist of some recitation on the record of the facts underlying the charge and some admission by the defendant to those facts.") (citing *Yates*, 726 A.2d at 48). The court also noted that, "unfortunately, *State v. Morrissette* and *State v. Cleary* inadvertently sowed confusion by importing the phrase 'substantial compliance' into our Rule 11(f) jurisprudence." *Id.* ¶ 18. Although *Morrissette* did not involve a Rule 11(f) challenge, *Cleary* "relied exclusively on *Morrissette* to deny the defendant's Rule 11(f) challenge because the trial court 'substantially complie[d]' with Rule 11(f)." *Id.* ¶ 20. Because *Cleary* was inconsistent with pre-existing Vermont precedent, and "[t]o the extent *Cleary* relied on *Morrissette* and the 'substantial compliance' standard," *Cleary* was overruled. *Id.* *Bridger* also stated that "[a]lthough we did not explicitly refer to the 'substantial compliance' standard when we overruled *Morrissette*, we now make explicit what *Manosh* made implicit: 'substantial compliance' has no place in

Rule 11(f) claims." *Id.*

Most recently, when considering the question of *Bridger*'s retroactive effect, the Vermont Supreme Court clarified which portions of *Bridger* announced new rules of law. *In re Barber*, 2018 VT 78, 195 A.3d 364. *Barber* identified three main holdings in *Bridger*: (1) the defendant must personally admit to the facts underlying the charge, (2) oral or written stipulations or waivers cannot substitute for an oral admission by the defendant, and (3) substantial compliance does not apply to Rule 11(f) challenges. *Id*. ¶ 11. With respect to the first holding, *Barber* cited the discussion in *Bridger* about longstanding Vermont case law requiring an on-the-record admission by the defendant, and determined that the holding "did not establish a new rule." *Id.* ¶ 10. The second holding, pertaining to oral or written stipulations, is of questionable application here as there is no record evidence of a stipulation by Simard in his state court case.

The third *Bridger* holding erases any doubt about whether substantial compliance has a role in Rule 11(f) proceedings. *Barber* determined that

> *Bridger*'s holding that substantial compliance does not apply to evaluating claims under Rule 11(f) was a new rule because it was not dictated by existing precedent and required overruling prior case law. The majority itself recognized that this Court's prior cases were not uniform on the question of whether substantial compliance applied in Rule 11(f) cases and explicitly

8

overruled prior case law that allowed such application. Id. ¶ 13. That clarification is relevant here.

The question of due diligence in this case centers in part on whether, prior to *Stocks*, *Manosh*, *Bridger* and *Barber*, Simard was "in a position to realize that he ha[d] an interest in challenging the prior conviction." *Johnson*, 544 U.S. at 308. The government argues that *Yates* was the controlling precedent, and that *Stocks* merely reaffirmed the *Yates* holding. Simard contends that with *Morrissette* and *Cleary* standing as good law, it was not until *Stocks*, *Manosh*, and arguably *Bridger* that such relief became readily available. The Vermont Supreme Court itself acknowledged in *Bridger* that *Morrissette* and *Cleary* had caused confusion, and Justice Dooley noted in his concurrence a lack of clear requirements for Rule 11 proceedings.

Simard moved for post-conviction relief in 2016, 18 months after *Manosh* overruled *Morrissette*, but prior to *Bridger*'s clear rejection of the "substantial compliance" standard. 2017 VT 79, ¶ 20. His timing was due, in part, to the initial advice received from attorneys who were undoubtedly aware of the "substantial compliance" case law. If, for the sake of argument, Simard received poor legal advice, it is not clear how quickly he should have discovered counsel's error, particularly given the uncertainties in the law. *Cf. Ryan v. United States*, 657 F.3d 604, 607 (7th Cir. 2011) ("No rule of thumb emerges from the

cases on how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number.").

Of course, in addition to the legal uncertainties, the Court may take into account the conditions of Simard's incarceration. *See Wims*, 225 F.3d at 190–91 (noting that conditions of confinement may be considered when determining the commencement of a limitations period); *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (courts may not "simply ignore[] the reality of the prison system"); *Rivera v. Nolan*, 538 F. Supp. 2d 429, 433 (D. Mass. 2008) ("Expectations about what defines due diligence from behind prison bars must be realistic."). Simard has submitted a declaration in which he offers reasons for any alleged delay. ECF No. 119-1. The declaration focuses on his federal litigation activity, the advice he received from counsel, and impediments related to his incarceration.

Simard begins by noting that his attorneys challenged the enhanced sentence in his federal case. To the extent that such challenges involved Simard's direct appeal, that activity carries no weight as *Johnson* held the duty of due diligence begins on the date of final judgment. 544 U.S. at 297. The Supreme Court thus implicitly negated consideration of the defendant's efforts in connection with his federal appeal. Simard also recalls counsel initially informing him that it would be "very difficult or impossible" to vacate his underlying state court conviction. ECF

10

No. 119-1 at 1.

After his federal sentencing in August 2012, Simard was allegedly assaulted at least five times and sexually assaulted once while in prison. He attributes his mistreatment to his status as a person with a child pornography conviction. Simard also spent a significant amount of time in the special housing unit (SHU). *Id.* at 2 ("more than a year in the SHU cumulatively"). He was moved approximately 13 times, and during one such move his legal papers were lost. When he requested legal help from prison staff, they referred him to inmates in the law library. Simard was reluctant to ask fellow inmates for legal assistance because of the nature of his state and federal convictions.

In "mid-to-late 2015" Simard reportedly learned from his federal attorney that it might be possible to challenge his state court conviction. *Id.* Federal counsel contacted the Vermont Defender General's office, but Simard himself had difficulty communicating with state counsel in part because that office does not accept collect calls. Simard was not working at the time, and explains that he had difficulty obtaining stamps from prison staff. *Id.* He was ultimately able to challenge his state court conviction, through counsel, in early 2016.

Given the substantial uncertainties in Vermont law at the time of his federal sentencing, and the conditions specific to

11

Simard while incarcerated, the Court finds that he acted with due diligence in pursuing post-conviction relief in state court.  He is therefore entitled to relief under 28 U.S.C. § 2255, and the Court will set a date for his re-sentencing.

## **Conclusion**

For the reasons set forth above, the Court does not accept the Magistrate Judge's Report and Recommendation (ECF No. 120), and instead **grants** Simard's motion for habeas corpus relief, and specifically re-sentencing (ECF No. 107), filed pursuant to 28 U.S.C. § 2255.

DATED at Burlington, in the District of Vermont, this 5th day of November, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
